## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| DRAW ANOTHER CIRCLE, LLC, *et al.*[1] | Case No. 16-11452 (KJC) |
| Post-Confirmation Debtors. | (Substantively Consolidated) |
| CURTIS R. SMITH, AS LIQUIDATING TRUSTEE OF THE HASTINGS CREDITORS' LIQUIDATING TRUST, | |
| Plaintiff, | Adv. No. **Refer to Summons** |
| vs. | |
| Mad Engine, Inc., | |
| Defendant. | |

### COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 547, 548 AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502

Curtis R. Smith, as Liquidating Trustee (the "Trustee" or the "Plaintiff") of the Hastings Creditors' Liquidating Trust (the "Trust"), by and through his undersigned counsel, files this complaint (the "Complaint") to avoid and recover preferential and/or fraudulent transfers against Mad Engine, Inc. (the "Defendant") and to disallow any claims held by Defendant (either filed or scheduled) against any of the debtors in the above-captioned chapter 11 cases (the "Debtors"). In support of this Complaint, Plaintiff alleges upon information and belief that:

### NATURE OF THE CASE

1.      Plaintiff seeks to avoid and recover from Defendant, or from any other person or entity for whose benefit the transfers were made, all preferential transfers of property

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Draw Another Circle, LLC (2102); Hastings Entertainment, Inc. (6375); MovieStop, LLC (9645); SP Images, Inc. (7773); and Hastings Internet, Inc. (0809). Under the confirmed *First Amended Joint Combined Disclosure Statement and Plan of Liquidation* (the "Plan"), all of the Debtors' bankruptcy cases aside from that of Draw Another Circle, LLC have been closed.

that occurred during the ninety (90) day period prior to the commencement of the above-captioned Debtors' bankruptcy proceedings pursuant to sections 547 and 550 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  Subject to proof, Plaintiff also seeks to avoid and recover from Defendant or any other person or entity for whose benefit transfers were made pursuant to sections 548 and 550 of the Bankruptcy Code any transfers that may have been fraudulent conveyances.

2.    In addition, Plaintiff seeks to disallow, pursuant to sections 502(d) and (j) of the Bankruptcy Code, any claim that Defendant has filed or asserted against the Debtors  or that has been scheduled for the benefit of Defendant.  Plaintiff does not waive but hereby reserves all of his rights and the rights of the Trust and/or the Debtors to object to any such claim for any reason, including, but not limited to, any reason set forth in sections 502(a) through (j) of the Bankruptcy Code.

## JURISDICTION AND VENUE

3.    This court has subject matter jurisdiction over this adversary proceeding, which arises under title 11, and arises in, and relates to cases under title 11, in the United States Bankruptcy Court for the District of Delaware (the "Court"), captioned *In re Draw Another Circle, LLC et al.,* jointly administered under Case No. 16-11452 (KJC) (collectively, the "Bankruptcy Cases"), pursuant to 28 U.S.C. §§ 157 and 1334(b) and Section XV of the Plan.

4.    This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2)(B), (F) and (H), and the Court may enter final orders for matters contained herein.

5.    Venue is proper in this district pursuant to 28 U.S.C. § 1409.

2

6.      The statutory and legal predicates for the relief sought herein are sections 502, 547, 548, and 550 of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

7.      Pursuant to Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the Court, Plaintiff states that, solely in his capacity as Trustee of the Trust, he consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**PROCEDURAL BACKGROUND**

8.      On June 13, 2016 (the "Petition Date"), the Debtors commenced their Bankruptcy Cases by each filing a voluntary petition for relief in this Court under chapter 11 of the Bankruptcy Code.  From and after the Petition Date, the Debtors continued to operate their businesses and manage their properties as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

9.      On February 14, 2017, this Court entered an order (the "Confirmation Order")[2] confirming Plan,[3] which became effective on February 20, 2017 (the "Effective Date").[4]

10.     In accordance with the Plan and the Confirmation Order, the Trust was established on the Effective Date of the Plan.  Also on the Effective Date, as contemplated by the

---

[2]   D.I. 1195.  All docket items referenced herein are from the docket of the lead Debtor in the Bankruptcy Cases, Draw Another Circle, LLC ("DAC").

[3]   D.I. 1195-1.  Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

[4]   D.I. 1219.

Plan and the Confirmation Order, the Debtors and the Trustee entered into that certain Hastings Creditors' Liquidating Trust Agreement (the "LTA").

11.    Pursuant to Section VII.A.5. of the Plan, holders of General Unsecured Claims comprise an impaired class of creditors and are not expected to be paid in full.  The Plan estimates a recovery of 2.3% to 3.0% on account of Allowed General Unsecured Claims.[5]

## THE PARTIES

12.    As more fully discussed in the *Declaration of Duane A. Huesers in Support of Debtors' First Day Pleadings (*the "First Day Declaration"),[6] the Debtors were a leading multimedia entertainment and lifestyle retailer.  Debtor Hastings Entertainment, Inc. ("Hastings") operated entertainment superstores that bought, sold, traded, and rented various home entertainment products.  Hastings also offered consumables and trend products such as apparel, t-shirts, action figures, greeting cards, and seasonal merchandise.  Debtor MovieStop, LLC ("MovieStop") was a retailer of new and used movies, and operated 39 destination locations in 10 states, primarily along the eastern coast of the United States.  Debtor SP Images, Inc. ("SPI") was a full-service licensed distributor of sports and entertainment products.  SPI specialized in providing retail partners with an assortment of licensed merchandise, including individual items licensed by Major League Baseball, the National Football League, the National Hockey League, the National Basketball Association, Marvel Comics, DC Comics, and more.

13.    Hastings, MovieStop, and SPI are each wholly-owned subsidiaries of lead Debtor DAC.[7]

---

[5]      Plan § VI.

[6]      D.I. 18.

[7]      A chart reflecting the Debtors' organizational structure can be found annexed to the First Day Declaration.

14.     Under the Plan and the LTA, the Trustee was appointed to administer the Trust.  Among other things, the Trustee is authorized to prosecute and resolve Causes of Action, including Avoidance Actions, on behalf of and in the name of the Debtors.[8]

15.     Upon information and belief, Defendant was, at all relevant times, a vendor or creditor of one or more of the Debtors that was a global licensed apparel wholesaler to or for the Debtors. Upon further information and belief, at all relevant times, Defendant's principal place of business is located at 6740 Cobra Way, Suite 100, San Diego, CA 92126. Plaintiff is informed and believes and on that basis alleges that Defendant is a corporation residing in and subject to the laws of the State of California.

## FACTUAL BACKGROUND

16.     Prior to the Petition Date, the Debtors, as operators of entertainment superstores, movie retailers and sports and entertainment product distribution businesses, maintained business relationships with various business entities, through which the Debtors regularly purchased, sold, received, and/or delivered goods and services.

17.     In connection with the above-referenced business operations, the Debtors regularly purchased goods from various entities including vendors, creditors, suppliers and distributors.  The Debtors also regularly paid for services used to facilitate their businesses.

18.     The Debtors' financial difficulties that led to the decision to file the Bankruptcy Cases include a combination of factors, all of which placed significant stress on the Debtors' liquidity position in the months leading up to the Petition Date. These factors included, among other things, a decline in revenue caused by the deterioration in the market for physical

---

[8]      Plan §§ II.A.8, II.A.21 and IX.E.1; LTA §§ 2.3(B) and 3.2(A).

NY01\KaneD\4341590.1

media products such as music, movies, books, and games, while the online retail media market experienced an explosion in growth.

19.    As of the Petition Date, the Debtors utilized a cash management system (the "Cash Management System") for the collection, concentration, management, and disbursement of funds among the Debtors' businesses.    As of the Petition Date, the Cash Management System consisted of bank accounts including store depository accounts, cash concentration accounts, and disbursement accounts.[9]

20.    Disbursement to vendors were made from the following accounts: account ending -5235 held by Hastings (the "Hastings Disbursement Account") at Bank of America, N.A.; account ending -9248 held by SPI (the "SPI Disbursement Account") at Amarillo National Bank ("ANB"); account ending -9264 held by MovieStop (the "MovieStop Disbursement Account") at BB&T; and account ending -0268 held by debtor Hastings Internet, Inc. at ANB (collectively, the "Disbursement Accounts").[10]

21.    Each of the Debtors drew upon its respective Disbursement Account to pay for its operational costs, including to pay vendors, suppliers, distributors, and other creditors, including Defendant.

22.    During the ninety (90) day period before the Petition Date, that is, between March 15, 2016 and June 13, 2016 (the "Preference Period"), the Debtors continued to operate their businesses, including through the transfer of property, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits or otherwise, to various entities.

---

[9]     *See Debtors' Motion for Entry of Order (I) Authorizing Continued Use of Cash Management System, (II) Authorizing Continued Use of Existing Business Forms (III) Authorizing the Continuation of Intercompany Transactions, (IV) Granting Administrative Priority Status to Postpetition Intercompany Transactions, (V) Authorizing Use of Prepetition Bank Accounts, Account Control Agreements, and Certain Payment Methods, and (VI) Temporarily Suspending the Requirements of 11 U.S.C. §345(b)* [D.I. 13] (the "Cash Management Motion") ¶¶ 13-23.

[10]     *See id.* Ex. B.

23.     Upon information and belief, during the course of their relationship, the Defendant and one or more of the Debtors entered into agreements, which are evidenced by invoices, communications and other documents (collectively, the "Agreements"). The Agreements concerned and related to the goods and/or services provided by Defendant to one or more of the Debtors as described in the "Parties" section of this Complaint. The details of the Agreements pursuant to which payments were made during the Preference Period are set forth on Exhibit A attached hereto and incorporated by reference, including the "Invoice Number," "Invoice Date" and "Invoice Amt."

24.     Defendant conducted business with one or more of the Debtors through and including the Petition Date pursuant to the Agreements.

25.     As identified in the Agreements identified on Exhibit A, one or more of the Debtors purchased goods and/or services from Defendant.

26.     Plaintiff has completed an analysis of all of the Debtors' readily available information and is seeking to avoid all of the transfers of an interest of the Debtors' property made by the applicable Debtor(s) to Defendant within the Preference Period.

27.     Plaintiff has determined that one or more of the Debtors made transfer(s) of an interest of the Debtors' property to or for the benefit of Defendant during the Preference Period through payments under the Agreements aggregating to an amount not less than $49,847.52 (the "Transfer" or "Transfers"). The details of each Transfer are set forth on Exhibit A attached hereto and incorporated by reference, including the "Check Number," "Check Amount," "Check Clear Date," and "Debtor Transferor."

28.     During the course of this adversary proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference

7

Period.  It is Plaintiff's intention to avoid and recover all transfers made by the Debtors of an interest in the Debtors' property and to or for the benefit of Defendant or any other transferee. Plaintiff reserves his right to amend this original Complaint to include: (i) further information regarding the Transfer(s), (ii) additional transfers, (iii) modifications of and/or revisions to Defendant's name, (iv) additional defendants, and/or (v) additional causes of action (*e.g.*, but not exclusively under, 11 U.S.C. §§ 506(d), 542, 543, 544, 545, 549 and/or 553) (collectively, the "Amendments"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## CLAIMS FOR RELIEF

### COUNT I
**(Avoidance of Preference Period Transfers – 11 U.S.C. § 547)**

29.     Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

30.     As more particularly described on Exhibit A attached hereto and incorporated herein, during the Preference Period, the Debtor(s) identified on Exhibit A made Transfers to or for the benefit of Defendant in an aggregate amount not less than $49,847.52.

31.     Each Transfer was made from one or more of the Disbursement Accounts described *supra,* and constituted transfers of an interest in property of the transferring Debtor(s).

32.     During the Preference Period, Defendant was a creditor at the time of each Transfer by virtue of supplying to the Debtor(s) identified on Exhibit A the goods and/or services identified in the Agreements, as more fully set forth on Exhibit A hereto, for which the Debtor(s) identified on Exhibit A was obligated to pay following delivery in accordance with the Agreements.

33.     Each Transfer was to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1), because each Transfer either reduced or fully satisfied a debt or debts then owed by the Debtor(s) identified on <u>Exhibit A</u> hereto.

34.     Each Transfer was made for, or on account of, an antecedent debt or debts owed by the Debtor(s) identified on <u>Exhibit A</u> hereto to Defendant before such Transfers were made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by the transferring Debtor(s), as identified on <u>Exhibit A</u> hereto.

35.     Each Transfer was made while the Debtors were insolvent. Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to 11 U.S.C. § 547(f).

36.     Each Transfer was made during the Preference Period.

37.     As a result of each Transfer, Defendant received more than Defendant would have received if: (i) the Debtors' cases were cases under chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code.  As evidenced by the proofs of claim that have been received to date and the impaired treatment afforded holders of General Unsecured Claims under the Plan, the Debtors' liabilities exceed their assets to the point that holders of General Unsecured Claims are not expected to receive payment in full on account of their respective allowed claims from the Debtors' bankruptcy estates; rather, as of the date of filing of the Plan, such holders have been projected to receive between 2.3 and 3.0 cents on the dollar.[11]

---

[11]     *See supra ¶* 11.

38.     In accordance with the foregoing, each Transfer is avoidable pursuant to 11 U.S.C. § 547(b).

## <u>COUNT II</u>
### (Avoidance of Fraudulent Conveyances – 11 U.S.C. § 548(a)(1)(B))

39.     Plaintiff hereby incorporates all previous allegations as though fully set forth herein.

40.     To the extent one or more of the Transfers identified on <u>Exhibit A</u> was not made on account of an antecedent debt, or was a prepayment for goods and/or services subsequently received, or was a debt incurred by one Debtor but paid by one or more of the other Debtors, subject to proof, Plaintiff pleads in the alternative that the transferring Debtor(s) did not receive reasonably equivalent value in exchange for such transfer(s) (the "<u>Potentially Fraudulent Transfers</u>") and:

A.     was insolvent as of the date of the Transfer(s), or became insolvent as a result of the Transfer(s); or

B.     was engaged, or about to engage, in business or a transaction for which any property remaining with the transferring Debtor(s) or for whose benefit the Transfer(s) was made was an unreasonably small capital; or

C.     at the times relevant to this Complaint, intended to incur, or believed it would incur, debts beyond its ability to pay upon maturity.

41.     Based upon the foregoing, the Potentially Fraudulent Transfers are avoidable pursuant to 11 U.S.C. § 548(a)(1)(B).

NY01\KaneD\4341590.1

## COUNT III
### (Recovery of Avoided Transfers – 11 U.S.C. § 550)

42.      Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Count.

43.      Plaintiff is entitled to avoid the Transfer(s) pursuant to 11 U.S.C. § 547(b) and/or any Potentially Fraudulent Transfers pursuant to 11 U.S.C. § 548 (collectively, the "Avoidable Transfers").

44.      Defendant was the initial transferee of the Avoidable Transfer(s) or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Transfer(s) were made.

45.      Pursuant to 11 U.S.C. § 550(a), Plaintiff is entitled to recover from Defendant the Avoidable Transfer(s), plus (i) pre- and post-judgment interest thereon from the date of demand to the date of payment or other satisfaction of such order and judgment and (ii) the costs of this action.

## COUNT IV
### (Disallowance of all Claims – 11 U.S.C. § 502(d) and (j))

46.      Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

47.      Defendant is a transferee of transfers avoidable under sections 547 and/or 548 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

48.      Defendant has not paid the amount of the Avoidable Transfer(s), or turned over such property, for which Defendant is liable under 11 U.S.C. § 550.

49.      Pursuant to 11 U.S.C. § 502(d), any and all Claims (including, but not limited to, claims arising under Section 503(b)(9) of the Bankruptcy Code) of Defendant and/or

11

its assignee against the Debtors' chapter 11 estates must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s), plus interest thereon and costs.

50.     Pursuant to 11 U.S.C. § 502(j), any and all Claims of Defendant and/or its assignee against the Debtors' chapter 11 estates previously allowed by the Debtors must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s).

<strong><u>PRAYER FOR RELIEF</u></strong>

WHEREFORE, Plaintiff requests that this Court grant the following relief against Defendant:

A. On Plaintiff's First, Second, and Third Claims for relief, judgment in favor of Plaintiff and against Defendant, avoiding all of the Avoidable Transfers and directing Defendant to return to Plaintiff the amount of the Avoidable Transfers, pursuant to 11 U.S.C. §§ 547(b), and/or 548 and 550(a), plus pre- and post-judgment interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action, including, without limitation, attorneys' fees;

B. On Plaintiff's Fourth Claim for relief, judgment in favor of Plaintiff and against Defendant disallowing any claims held or filed by Defendant against the Plaintiff until Defendant returns the Avoidable Transfers to Plaintiff pursuant to 11 U.S.C. §§ 502(d) and (j); and

C. Granting Plaintiff such other and further relief as this Court may deem just and proper.

12

NY01\KaneD\4341590.1

Dated: Wilmington, Delaware
June 15, 2017

GOLDSTEIN & MCCLINTOCK LLLP

By: /s/ Maria Aprile Sawczuk
Maria Aprile Sawczuk (No. 3320)
1201 North Orange Street, Suite 7380
Wilmington, Delaware 19801
Telephone:  302.444.6710
Facsimile:   302.444.6709
e-mail: marias@restructuringshop.com

*-and-*

Joseph L. Steinfeld, Jr., Esq., MN SBN 0266292
Kara E. Casteel, Esq., MN SBN 0389115
(*Admitted Pro Hac Vice*)
Kara E. Casteel, Esq., MN SBN 0381995
ASK LLP
2600 Eagan Woods Drive, Suite 400
St. Paul, MN  55121
Telephone: (651) 406-9665  ext. 846
Fax: (651) 406-9676
Email: kcasteel@askllp.com

*-and-*

Edward E. Neiger, Esq.
151 West 46th Street, 4th Fl.
New York, NY  10036
Telephone: (212) 267-7342
Fax: (212) 918-3427

*Special Counsel to the Trustee of the
Hastings Creditors' Liquidating Trust*

13